```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

 JOSEPH ROBERT SYLVESTER, JR.,

                Plaintiff,              MEMORANDUM & ORDER
                                         20-CV-2903 (EK)
        -against-

 COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

-------------------------------------x
```

ERIC KOMITEE, United States District Judge:

        Plaintiff Joseph Sylvester challenges the Social Security Administration's denial of his claim for disability insurance benefits. Before the Court are the parties' cross-motions for judgment on the pleadings. For the following reasons, I grant Sylvester's motion and deny the Commissioner's motion.

## I. Background

**A.   Procedural Background**

        On March 8, 2017, Sylvester applied for disability benefits, alleging a disability onset date of July 31, 2016. Administrative Tr. ("Tr.") 11, ECF No. 10. The agency denied his claim. *Id.* at 709. On October 22, 2018, an administrative law judge ("ALJ") held a hearing on Sylvester's claim in Queens, New York. *Id.* at 672. On December 4 of that year, the ALJ concluded that Sylvester was not disabled and therefore not

1

entitled to disability benefits. *Id.* at 22. On April 28, 2020, the agency's Appeals Council denied Sylvester's request for review of the ALJ's decision, rendering it final. *Id.* at 1-4. Sylvester timely sought review of that decision in this Court. Compl., ECF No. 1.

**B. The ALJ's Disability Evaluation**

Under the Social Security Act, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration's regulations require ALJs to follow a five-step sequence in evaluating disability claims. 20 C.F.R. § 404.1520(a)(4).

First, the ALJ determines whether the claimant is engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i), (b). If not, then at step two, the ALJ evaluates whether the claimant has a "severe impairment" — that is, an impairment or a combination of impairments that "significantly limits" his "physical or mental ability to do basic work activities." *Id.* § 404.1520(a)(4)(ii), (c). If the ALJ identifies a severe impairment, then at step three, she must determine whether it meets or equals one of the impairments listed in Appendix 1 of the regulations — the "Listed

2

Impairments."  *Id.* § 404.1520(a)(4)(iii), (d); *see also id.* pt. 404, subpt. P, app. 1.  If it does, the ALJ will deem the applicant disabled.  *Id.* § 404.1520(a)(4)(iii).

Here, ALJ Gloria Pellegrino determined that Sylvester had not engaged in substantial gainful activity since his alleged onset date.  Tr. 13.  The ALJ also determined that Sylvester — a twenty-year Army veteran, *see id.* at 894 — suffered from the following "severe impairments": post-traumatic stress disorder ("PTSD"), generalized anxiety disorder, obsessive-compulsive disorder ("OCD"), bipolar disorder, benign paroxysmal position vertigo, a spinal cord injury with cervical radiculopathy, obesity, and a respiratory disorder.[1]  *Id.*  The ALJ concluded, however, that none of these severe impairments rose to the level of a Listed Impairment.  *Id.* at 13-14.  With respect to mental disorders, she specifically considered Listings 12.04 ("Depressive, bipolar and related disorders"), 12.06 ("Anxiety and obsessive-compulsive disorders"), 12.08 ("Personality and impulse-control disorders"), and 12.15 ("Trauma- and stressor-related disorders").  *Id.* at 15.

When the ALJ finds that the claimant has severe impairments that do not meet the requirements of the Listings, she must determine the claimant's residual functional capacity

---

[1] Sylvester does not raise any claims related to his physical impairments here.

3

("RFC"), 20 C.F.R. § 404.1520(a)(4)(iv), which is the most the claimant can do in a work setting notwithstanding his limitations. *Id.* § 404.1545(a)(1). The ALJ concluded that Sylvester had the residual functional capacity to perform "light work," as defined in 20 C.F.R. § 404.1567(b), with limitations. Tr. 16. She determined that he could perform simple, routine, repetitive tasks and could have only occasional interaction with the public. *Id.* She also determined that he required a sit/stand option allowing for a change of position for one to two minutes every hour without leaving his workstation. *Id.* The ALJ's determination also included that he could never climb ladders, ropes, or scaffolds; and that he must have no exposure to the following conditions: hazards such as dangerous moving machinery or unprotected heights, extreme heat or cold, and respiratory irritants. *Id.*

At step four, the ALJ considers whether, in light of the RFC determination, the claimant can perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv), (f). Here, the ALJ found that Sylvester could not perform his past work as a veteran specialist or as a unit administrator/human resources supervisor. Tr. 20. At step five, the ALJ evaluates whether the claimant can perform jobs existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(v), (g). The ALJ determined that Sylvester could perform such jobs, including

4

as a laundry folder, gasket inspector, or laminating machine off-bearer. Tr. 21. Given that determination, the ALJ concluded that Sylvester was not disabled. *Id.* at 21-22.

## II. Standard of Review

A district court has jurisdiction to review the final judgment of the Commissioner denying an application for Social Security disability benefits. 42 U.S.C. §405(g). The review is limited to two questions: whether substantial evidence supports the Commissioner's decision, and whether the Commissioner applied the correct legal standards. *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).

"Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008).[2] "[I]f supported by substantial evidence," the Commissioner's factual findings "shall be conclusive." 42 U.S.C. § 405(g).

## III. Discussion

Sylvester raises three arguments on appeal. First, he contends that the ALJ failed to weigh properly the medical opinion evidence of his treating sources — Dr. Marion Eakin, a board-certified psychiatrist, and Marion Creasap, a psychiatric

---

[2] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

5

nurse practitioner — at the U.S. Department of Veterans Affairs' New York Harbor Healthcare System. Specifically, he argues that the determinations contained in the "Psychiatric/Psychological Impairment Questionnaire" that Creasap completed, and Dr. Eakin co-signed, on November 7, 2017 should have been given controlling weight under the "treating physician rule." Mem. in Supp. of Pl.'s Mot. for J. on the Pleadings ("Pl. Br.") 11-21, ECF No. 15. That assessment opined that Sylvester had marked limitations in his ability to concentrate, adapt in a work environment, and interact with others, and that he would be absent more than three times per month due to his impairments or treatment. Tr. 1241-42. The ALJ accorded this opinion "little weight" after finding that it contradicted contemporaneous medical records and placed undue weight on Sylvester's description of his symptoms. *Id.* at 19.

Second, Sylvester contends that the ALJ failed properly to evaluate his subjective statements regarding his mental health. Pl. Br. 22-25. And third, he contends that the ALJ did not adequately consider the VA's determination that he was "60 percent" disabled as of December 1, 2017 before discounting it. *Id.* at 25.

For the reasons that follow, this case is remanded to the ALJ for reconsideration of the Eakin-Creasap opinion in

6

accordance with the treating physician rule, and for further review of the VA's disability determination.[3]

**A.   The Eakin-Creasap Opinion**

1.   Application of the Treating Physician Rule

Sylvester filed his claim prior to March 27, 2017, at which time the treating physician rule was still in effect.  *See Crowell v. Comm'r*, 705 F. App'x 34, 35 (2d Cir. 2017).  Under that rule, an ALJ must give a treating physician's opinion "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record."  *Burgess*, 537 F.3d at 128.  An ALJ may discount a treating physician's opinion, however, when it is conclusory or "not consistent with other substantial evidence in the record, such as the opinions of other medical experts."  *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

When declining to accord controlling weight to a treating physician's opinion, an ALJ must "explicitly review the factors listed in 20 C.F.R. § 404.1527(c) to determine what (if any) lesser weight to give those opinions."  *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022).  Those factors include

---

[3] Because the ALJ's reconsideration of the Eakin-Creasap opinion will require additional review of the evidence of Sylvester's mental impairments, including his own statements about his mental health, the Court does not address his second argument separately here.

7

"(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015). But the ALJ need not undertake a "slavish recitation of each and every factor" where her "reasoning and adherence to the regulation are clear." *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013).

"At both steps [of the treating physician analysis], the ALJ must give good reasons in [her] notice of determination or decision for the weight [she] gives the treating source's medical opinion." *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019).[4] "Failure to provide such good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand." *Burgess*, 537 F.3d at 129-30.

The parties dispute whether the ALJ was required to evaluate the Eakin-Creasap opinion under the treating physician rule. Creasap, the nurse practitioner, completed and signed the psychiatric assessment, and she and Dr. Eakin both signed it. Tr. 1242. In discussing the opinion, the ALJ appears to have combined the titles of the two practitioners (who, perhaps confusingly, share the same first name), stating that the

---

[4] It is this Court's general practice to use pronouns corresponding to the gender of the individual in question. Here, the relevant individual is ALJ Pellegrino.

opinion was from "treating counselor, Marion Creasap, M.D." Tr. 19. Given that conflation, it is not clear whether the ALJ considered the opinion to be that of both Dr. Eakin and Creasap, or Creasap's alone.

District courts in the Second Circuit have explained that "medical source statements cosigned by a treating physician should be evaluated as having been the treating physician's opinion." *King v. Comm'r of Soc. Sec.*, 350 F. Supp. 3d 277, 282 (W.D.N.Y. 2018); *see also Santiago v. Barnhart*, 441 F. Supp. 2d 620, 628 (S.D.N.Y. 2006) ("Since [the treating physician] signed his name to the report and there is no evidence indicating that the report does not represent his opinion, the ALJ erred in discounting [that] opinion" solely on the basis that the treating physician did not write the report).

It is true that the record does not clearly reveal whether Dr. Eakin saw Sylvester face-to-face or, alternatively, simply signed off on the nurse practitioner's assessment. This is not, however, necessarily dispositive of the treating physician rule's applicability. While some courts have declined to apply the rule when "there are no records or other evidence to show that the physician treated the claimant," *Baldwin v. Colvin*, No. 15-CV-1462, 2016 WL 7018520, at *10 (D. Conn. Dec. 1, 2016), the Second Circuit has not mandated that outcome. Indeed, the Circuit recently noted — with seeming approval —

9

that an ALJ had evaluated an opinion prepared by a nurse but "signed by an acceptable medical source" under the treating physician rule. *Johnson v. Comm'r of Soc. Sec.*, 790 F. App'x 325, 326 (2d Cir. 2020); *cf. Hargett v. Comm'r of Soc. Sec.*, 964 F.3d 546, 553 (6th Cir. 2020) (declining to adopt a rule that "an opinion co-signed by a treating source should be evaluated as a treating-source opinion only if the two providers are part of the same treatment team providing ongoing care to the claimant").

Accordingly, given that Dr. Eakin signed the opinion authored by Creasap, the ALJ was required to evaluate that opinion under the treating physician rule or — at the least — develop the record further on the question of whether Dr. Eakin actually treated Sylvester. *See, e.g.*, *Viverito v. Colvin*, No. 14-CV-7280, 2016 WL 755633, at *13 (E.D.N.Y. Feb. 25, 2016) (when an ALJ "has any doubts as to whether an opinion signed by both a doctor and a physician's assistant is the opinion of the doctor, he should develop the record by seeking clarification from the doctor"); *Payne v. Astrue*, No. 10-CV-1565, 2011 WL 2471288, at *5 (D. Conn. Jun. 21, 2011) (because the physician assistant's opinion was co-signed by a physician, ALJ "should have explained whether or not he considered these opinions to be the opinions of an appropriate medical source, and if not, then

10

why"). Given the ALJ's failure to do either, this opinion assumes the treating physician rule's applicability.

2. Compliance with the Treating Physician Rule

The opinion at issue diagnosed Sylvester with PTSD, generalized anxiety disorder, bipolar disorder (depressive), and OCD. Tr. 1238. It states that his most severe symptoms were "persistent depression, anxiety, feelings of guilt, [and] worthlessness," and concluded that Sylvester showed markedly limited capacity in three of the four mental functional categories that appear in the paragraph B criteria of the mental disorder Listings: Concentration and Persistence, Social Interactions, and Adaptation; the clinicians also found that he had moderate-to-marked limitations in the fourth category: Understanding and Memory. *Id.* at 1240-41; *see also* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(2)(b). As noted above, they also estimated that he would be absent from work more than three times per month due to his impairments or treatment. Tr. 1242.

The ALJ concluded that this opinion deserved "little weight" because it was "inconsistent with contemporaneous treatment notes showing that the claimant's judgment and insight [were] good, that he [was] otherwise stable, that he had regular attendance at all therapy and medical appointments, and had completed anger management classes." *Id.* at 19. Further, the

11

ALJ stated that the opinion excessively relied on Sylvester's subjective complaints. *Id.* The ALJ found that "despite the claimant's subjective complaints of psychiatric symptoms, they were well-controlled with medication and therapy." *Id.* at 18.

The ALJ failed to comply with the treating physician rule. While the ALJ cited some evidence that she considered to be inconsistent with the Eakin-Creasap opinion, *see id.* at 19, she did not explicitly review the three other *Greek* factors — *i.e.*, the extent and nature of the treatment, the amount of medical evidence supporting the opinion, and whether the physician is a specialist. Because the "ALJ failed to consider each factor explicitly," she "committed a procedural error." *Schillo*, 31 F.4th at 78. Although such omissions are frequently excused when the ALJ "applie[s] the substance of the treating physician rule" and provides "good reasons" for the weight accorded to the opinion, *id.* at 79, the ALJ did not do so here.

First, the ALJ erred by discounting the opinion's conclusions that Sylvester had marked limitations in his ability to concentrate, adapt in a work environment, and interact with others, and that he would be absent more than three times per month due to his impairments or treatment. The ALJ did so based on, among other things, the ground that Dr. Eakin and Creasap relied on Sylvester's subjective complaints to inform their conclusions. "Psychiatric testing is inherently based on

12

subjective reports" because mental health is "less susceptible to objective testing and assessment." *Rucker v. Kijakazi*, 48 F.4th 86, 92 (2d Cir. 2022). And the Second Circuit has found error when an ALJ devalues a treating physician's opinion based on its consideration of subjective patient reports. *See id.* ("[W]e cannot accept the fact that Dr. Mirza's conclusions relied on subjective methods of analysis as a reasonable ground for discounting a treating physician's opinion.").

Second, at least some of the evidence that the ALJ points to as inconsistent with the opinion is not actually inconsistent. For one thing, the ALJ pointed to contemporaneous notes indicating that Sylvester had good judgment and insight. Tr. 19. The Eakin-Creasap opinion, however, was not based on Sylvester's judgment and insight; rather, it was predicated on findings that Sylvester had marked and moderate-to-marked limitations in a work setting across many criteria due to his depression, anxiety, and other symptoms. *See id.* at 1241.

Nor does Sylvester's regular attendance at therapy and medical appointments undermine this determination. Therapy sessions and medical appointments tend to be periodic, relatively short in duration, and for the purpose of improving the patient's condition. Dr. Eakin and Creasap, however, were evaluating Sylvester's capacity to work eight hours per day over a five-day workweek, which presents a distinct set of challenges

13

in a different context. The ability to attend medical appointments on a consistent basis is not an indication that someone is able to function successfully in a work environment. *See Rucker*, 48 F.4th at 93 ("Rucker's ability to attend counseling sessions — in which she is receiving treatment to alleviate her symptoms — has no bearing on her ability to attend work."); *Patrick M. v. Saul,* No. 18-CV-290, 2019 WL 4071780, at *10 (N.D.N.Y. Aug. 28, 2019) (a plaintiff's "ability to attend medical appointments and engage in other daily activities of limited duration do not correlate to [his] ability to stay on-task during an eight-hour workday"). "[R]elying on attendance at medical appointments is unhelpful in determining whether an individual with significant psychiatric issues can consistently show up and successfully function in a work environment." *Rucker*, 48 F.4th at 93. In so relying, the ALJ erred.

The ALJ also pointed, in discounting the Eakin-Creasap opinion, to Sylvester's completion of an anger management course and to record evidence that supposedly showed he was "otherwise stable." *Id.* at 19. But the record suggests that Sylvester was not functioning well on a consistent basis. For example, in June and July of 2018, Sylvester was questioned by officials from the both the Office of Inspector General of the U.S. Department of Veterans Affairs ("VA") and the U.S. Department of Homeland Security regarding an incident in which he had called

14

the White House VA Hotline and threatened an employee. *Id.* at 1513-14, 1617. That incident, which occurred nearly a year after Sylvester completed the anger management course, *see id.* at 1236, suggests that he was not in control of his symptoms. In fact, Sylvester informed the ALJ that during the incident, he "experience[d] high anxiety" and "uncontrollable tremors." *Id.* at 681. Additionally, treatment notes from 2017 to 2019 show that Sylvester suffered throughout this period from depression, anxiety, and other symptoms. *See, e.g., id.* at 51, 322, 1118, 1176.

At most, the record appears to indicate that by late 2018 — prior to the ALJ's decision — Sylvester reported that he was functioning at a "baseline" on multiple occasions. *See, e.g., id.* at 479, 534, 537, 541. But those reports do not indicate that Sylvester had the capacity to work a full eight-hour day; rather, they suggest that he was meeting a certain minimum standard of functionality. "Stable" is a relative term, and to the extent that Sylvester was stable during this period, he was still operating with significant psychiatric symptoms. Indeed, in August 2018, while reporting to be "functioning at a baseline," Sylvester still had feelings of "anxiety, anger, rage, and fear." *Id.* at 1531. In January of 2019, shortly after the ALJ's decision, Creasap observed that Sylvester exhibited "anxiety and sadness" even while she found him to be

15

"less agitated [than in] previous appointments." *Id.* at 626-27. The ALJ's description of Sylvester's condition as "otherwise stable" thus obscures the record evidence showing that even his baseline condition entailed serious mental health challenges.

In sum, the ALJ failed to provide good reasons for discounting the Eakin-Creasap opinion. While the ALJ cited a handful of notes from the record suggesting that Sylvester could reliably attend appointments and complete certain coursework, she did not properly contextualize that evidence in light of the record as a whole. *See Estrella*, 925 F.3d at 97 ("Cycles of improvement and debilitating symptoms of mental illness are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."); *see also Scott*, 647 F.3d at 740 (an ALJ is "not permitted to cherry-pick" certain items from the record "to support a denial of benefits"). Accordingly, the ALJ misapplied the treating physician rule — not merely procedurally but also substantively.

**B.   The VA's Disability Determination**

In June of 2018, the VA assessed Sylvester as being sixty percent disabled as of December 1, 2017.  Tr. 1477. Although "[a] determination made by another agency regarding a claimant's disability is not binding on the Social Security

16

Administration," "it is entitled to some weight and should be considered." *Atwater*, 512 F. App'x at 70; *see also* SSR 06-03P, 2006 WL 2329939 (Aug. 9, 2006) ("the adjudicator should explain the consideration given to [disability decisions by other governmental and nongovernmental agencies] in the notice of decision").

Here, the ALJ concluded that the VA's disability determination should receive "[l]ittle weight" because "[t]he determination of disability is reserved to the Commissioner." Tr. 20.  That reason alone is insufficient; indeed, there would be no reason to require an ALJ to consider another agency's disability determination at all if the ALJ could discount it solely on the basis that determining disability for purposes of Social Security is a decision left to the Commissioner.  In effect, the ALJ completely disregarded the VA's determination. *See Machia v. Astrue*, 670 F. Supp. 2d 326, 334 n.10 (D. Vt. 2009) ("[T]he Commissioner is not generally free to completely disregard a VA disability rating.").  Two factors compound this error: first, Sylvester was receiving treatment at the VA at the time of the agency's disability determination, such that the agency would have been intimately familiar with his health status; and second, the disability onset date found by the VA (December 1, 2017) fell within the period during which Sylvester alleges disability for purposes of the instant benefits

17

application.  *See Best v. Comm'r of Soc. Sec.*, No. 18-CV-5751, 2020 WL 1550251, at *4 (E.D.N.Y. Mar. 31, 2020) (ALJ "failed to properly consider the VA's disability determination" where the plaintiff had "received most of her care at a VA medical center" and the determination was made "during the relevant [Social Security] benefits period").

On remand, the ALJ must provide adequate consideration of the VA's disability determination and explain the weight due based on substantial evidence in the record.  *See id.* at *5.

## IV. Conclusion

For the foregoing reasons, Sylvester's motion for judgment on the pleadings is granted, and the Commissioner's motion is denied.  This case is remanded for further proceedings consistent with this opinion.

SO ORDERED.

                                                                            /s/ Eric Komitee
                                              ERIC KOMITEE
                                              United States District Judge

Dated:     September 19, 2023
             Brooklyn, New York